UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Trustee for the Benefit of the
Holders of COMM 2014-CCRE15 Mortgage Trust
Commercial Mortgage Pass-Through Certificates,

Plaintiff,

-against-

840 WESTCHESTER AVENUE NMA, LLC, 840
WESTCHESTER AVENUE NPPN, LLC, 840
WESTCHESTER AVENUE NPPS, LLC, 840
WESTCHESTER HOLDINGS LLC, BERNARD
PUTTER, and DOES 1 through 100,

Defendants.

Case No. 1:24-cv-07680 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

This case arises from a dispute over a mortgage and a loan relating to a commercial property in the Bronx, New York. Plaintiff Wells Fargo Bank, National Association ("Plaintiff") now moves this Court for partial summary judgment, Dkt. 40, and to appoint a receiver for that property, Dkt. 44. Only Defendant Bernard Putter has appeared in this action and neither he nor any other Defendant has opposed either motion. For the reasons that follow, the Court GRANTS Plaintiff's motion for partial summary judgment and DENIES Plaintiff's motion to appoint a receiver without prejudice to refiling if necessary.

## BACKGROUND

The facts recounted herein are drawn from Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts, the Declaration of Jerod Miller, and the exhibits attached thereto. Dkt. 43 ("SUF"); Dkt. 42 ("Miller Decl."); Dkts. 42-1 to 42-20.

## I.  Factual Background

Plaintiff is a national banking association headquartered in Sioux Falls, South Dakota. SUF ¶ 1.  Defendants 840 Westchester Avenue NMA, LLC, 840 Westchester Avenue NPPN, LLC, and 840 Westchester Avenue NPPS, LLC (collectively, "Borrowers"), are single-member Delaware limited liability companies ("LLCs"); their sole member, Defendant Bernard Putter ("Guarantor"), is a New York citizen.  SUF ¶ 2.  Defendant 840 Westchester Holdings LLC ("Holdings" and, collectively with Guarantor and Borrowers, "Defendants") is a New York LLC, whose members are all citizens of and domiciled in New York.  SUF ¶ 3.

This dispute centers around a two-story commercial property located at 840 and 848 Westchester Avenue, Bronx, New York, and 867 Longwood Avenue, Bronx, New York, as well as certain other property as defined in a Mortgage and Security Agreement described below (collectively, the "Property").  SUF ¶ 4; *see* Dkt. 42-3 ("Mortgage") § 1.1.  Borrowers owned the Property pursuant to certain ground leases.  SUF ¶ 5.

### A.  The Loan

840 Westchester Ave. LLC (the "Original Borrower") and Cantor Commercial Real Estate Lending, L.P. (the "Original Lender") entered into a loan agreement dated December 27, 2013, relating to a loan in the original principal amount of $14,000,000 (the "Loan") as evidenced by a Consolidated, Amended, and Restated Promissory Note dated December 27, 2013.  SUF ¶ 7; *see* Dkt. 42-1 (as amended and assigned, the "Loan Agreement"); Dkt. 42-2 (the "Note").  The maturity date of the Loan was January 6, 2024.  SUF ¶ 8; Dkt. 42-1 ("Loan Agreement") at 26.

As security for its obligations under the Loan, the Original Borrower as mortgagor executed a Mortgage and Security Agreement (the "Mortgage") dated December 27, 2023, which was recorded in the New York City Register on February 3, 2014, with the mortgage-

recording tax duly paid.  SUF ¶ 9.  Pursuant to the Mortgage, the Original Borrower created a lien on and security interest in, and mortgaged, warranted, granted, bargained, sold, conveyed, assigned, pledged, transferred and set over unto the Original Lender, its successor and assigns, forever, with mortgage covenants and with all power of sale other statutory rights and covenants permitted under New York law, all of the Original Borrower's right, title, and interest in and to the Property.  SUF ¶ 11; Mortgage § 1.1.  Section 1.2 of the Mortgage includes an "absolute[] and unconditional[]" assignment of all right, title and interest of Borrowers in and to all "Leases" and "Rents," as those terms are defined in the Mortgage, affecting or from the Property.  SUF ¶ 13; Mortgage § 1.2.  Sections 1.3 and 1.4 of the Mortgage include a security agreement and fixture filing that grant the holder of the Mortgage a security interest in its favor with respect to, among other things, the Property that is covered by the Uniform Commercial Code (the "Loan Collateral"), including fixtures, equipment, and certain personal property.  SUF ¶ 12; Mortgage §§ 1.3-1.4; *see* Mortgage § 1.1(f)-(h) (defining equipment, fixtures, and personal property).  The Original Lender perfected its first-priority security interest in the Loan Collateral by publicly filing two UCC financing statements, one with the Delaware Secretary of State on January 14, 2014, and one in the New York City Register on February 13, 2014.  SUF ¶ 21.[1]

As further support for obligations under the Note, the Original Borrower executed and delivered to the Original Lender an Assignment of Lease and Rents (the "AL&R") dated December 27, 2013, absolutely, presently, and irrevocably assigning and transferring to the Original Lender all of the Original Borrower's rights, title, and interest in and to all Leases and Rents affecting or from the Property.  SUF ¶ 15; *see* Dkt. 42-5 ("AL&R").  Section 7.1(h)

---

[1] For ease of reference, the Court will refer to the Delaware Secretary of State as simply "Delaware" and the New York City Register as the "City."

of the Mortgage and Section 3.1 of the AL&R provide that upon the occurrence and during the continuance of any "Event of Default," the Original Borrower's license to collect, receive, use, and enjoy the Rents from the Property shall be automatically revoked. SUF ¶ 16; Mortgage § 7.1(h); AL&R § 3.1.

**B. The Assignment to Plaintiff**

Following the original Loan Agreement, Mortgage, and AL&R, the Original Lender assigned the Mortgage to Plaintiff by executing and delivering to it an Assignment of Mortgage dated February 11, 2014, which was recorded on March 28, 2014. SUF ¶ 14. The Original Lender also executed and delivered to Plaintiff an assignment of the AL&R dated February 11, 2014 (the "AAL&R"), whereby the Original Lender assigned the AL&R to Plaintiff. SUF ¶ 17; Dkt. 42-6 ("AAL&R"). The AAL&R was recorded on March 28, 2014. SUF ¶ 17. Pursuant to these assignments, Plaintiff became the assignee and transferee, absolutely, presently, and irrevocably, of all of the Original Borrower's rights, title, and interest in and to all Leases and Rents affecting or from all or a portion of the Property. SUF ¶ 18.

The Original Lender also assigned to Plaintiff the UCC financing statements filed in Delaware and the City through UCC Financing Statement Amendments filed March 25, 2014 and March 28, 2014, respectively. SUF ¶¶ 22-23.

**C. Sale to Borrowers**

Subsequently, the Original Borrower and Borrowers entered into an agreement for sale and purchase of the Property dated April 3, 2014 (the "Purchase Agreement"), pursuant to which the Property, including the Original Borrower's leasehold interests under the ground lease, was to be transferred to Borrowers and Borrowers were to assume the Loan. SUF ¶ 19. Brian Shirken and Richard Margolis (together, the "Original Guarantors"), Plaintiff, the

Original Borrower, Borrowers, and Guarantor entered into a Consent and Assumption Agreement with Limited Release dated July 29, 2014 (the "Assumption Agreement") under which Borrowers assumed the obligations to pay the Loan, all interest thereon, and all other obligations under the Loan documents.  SUF ¶ 20.  The Assumption Agreement was recorded on September 10, 2014.  SUF ¶ 20.

In connection with the Loan, the Guarantor executed and delivered a Guaranty of Recourse Obligations dated July 29, 2014, in favor of Plaintiff.  SUF ¶ 74; Dkt. 42-18 (the "Recourse Guaranty").  Pursuant to Section 1.1 of the Resource Guaranty, the Guarantor irrevocably and unconditionally guaranteed to Plaintiff and its successors and assigns the Guaranteed Obligations, defined in Section 1.2 of the Resource Guaranty as the obligations and liabilities for which Borrowers are personally liable under Section 3.1 of the Loan Agreement.  SUF ¶ 75.  The Section 3.1 obligations and liabilities include personal liability for losses, damages, costs, and expenses incurred by Plaintiff arising out of or in connection with, among other things, misapplication or conversion of any Rents or monetary collateral for the Loan, failure to pay taxes, and failure to deliver security deposits with respect to the Property.  SUF ¶ 76.  They also include Borrowers' personal liability to Plaintiff for the payment of the outstanding principal of the Loan, all accrued and unpaid interest, and all other sums due to Plaintiff under the Loan documents if Borrowers fail to obtain Plaintiff's prior written consent to any transfer or if Guarantor files a voluntary petition under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law.  SUF ¶¶ 77-78.

Plaintiff filed UCC financing statement amendments in Delaware on September 3, 2014, and in the City on February 28, 2018, naming Borrowers as debtors.  SUF ¶¶ 24-25.  Plaintiff continued to perfect its security interest in the Loan Collateral by filing UCC

financing statement continuations in Delaware and UCC financing statement amendments in the City.  SUF ¶ 26.

### D.  Borrowers Default and Guarantor Files for Bankruptcy

The Loan Agreement defines several events that constitute "Events of Default," the occurrence of which trigger Plaintiff's right to exercise certain remedies, including foreclosing the security instrument or the Property.  *See* Loan Agreement § 8.1.1, 8.1.2.  As relevant here, Events of Default include Borrowers' failure to pay any portion of the Debt when due, failure to pay certain taxes, transfer of the Property or Loan Collateral without permission of Plaintiff, and failure to pay late payment charges, as well as Guarantor filing any petition for bankruptcy.  Loan Agreement §§ 2.3, 8.1(a)(i)-(ii), (iv), (viii), (ix).

Beginning in 2018, Borrowers began to default.  First, Borrowers executed an assignment and assumption of the ground lease without Plaintiff's consent dated September 18, 2018, and recorded on September 24, 2018.  SUF ¶ 6.  The assignment and assumption of the ground lease assigned to Holdings all of Borrowers' right, title, and interest in and to the ground lease pertaining to the 840 Westchester Avenue property.  SUF ¶ 6; Dkt. 42-20 at 4.  Next, Borrowers defaulted on their obligation to pay taxes.  The Loan Agreement requires Borrowers to pay certain taxes against the Property when due, unless Borrowers deposit an amount sufficient to pay the taxes at least 30 days before they become due.  SUF ¶ 46.  Borrowers failed to deposit sufficient funds to pay taxes due on July 1, 2020, and January 4, 2021.  SUF ¶ 47.  Plaintiff advanced funds in the amount of $326,559.36 for the payment of those taxes and sent Borrowers and Guarantor a letter dated March 8, 2021, demanding that borrowers pay the amount Plaintiff had advanced.  SUF ¶ 48.  Borrowers did not do so.  SUF ¶ 49.  Subsequently, on February 6, 2022, November 6, 2023, and December 6, 2023,

Borrowers failed to pay Plaintiff the Monthly Debt Service Payment Amount of $84,076.46 as set forth in Section 2.3.2 of the Loan Agreement.  SUF ¶¶ 34-35.

The Loan has a maturity date of January 6, 2024.  SUF ¶ 8.  Borrowers did not pay the outstanding principal balance of the Loan, all accrued and unpaid interest, and all other amounts then due under the Loan documents on or before that date.  SUF ¶ 32; Miller Decl. ¶ 26.  As of January 6, 2024, the outstanding principal balance of the Loan was $10,641,807.72.  SUF ¶ 88.  The Loan Agreement provides that in the event of and during the continuance of an Event of Default, the unpaid principal balance of the loan, all accrued and unpaid interest, and all other sums due to Plaintiff under the Loan documents bear interest at the "Default Rate" or 10.272% per annum.  SUF ¶ 37.  Failure to pay interest at the Default Rate constitutes an Event of Default under the terms of the Loan Agreement.  SUF ¶ 38. Borrowers did not pay interest at the Default Rate.  SUF ¶ 43.  Further, the Loan Agreement provides that Borrowers must pay a late payment charge in the event of failure to pay any principal, interest, or other sums due under the Loan documents.  SUF ¶ 41.  Failure to pay such charges constitutes an Event of Default, and Borrowers did not pay Plaintiff late payment charges either.  SUF ¶¶ 42-44.

In the intervening period, Guarantor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on or about December 19, 2023.  SUF ¶ 83.  Guarantor also filed a voluntary petition under Chapter 11 of the Bankruptcy Code on or about May 20, 2024.  SUF ¶ 84.

By letter dated and sent via certified mail as specified in the Loan Agreement, Plaintiff sent Borrowers, Holdings, and Guarantor a letter of default on September 18, 2024, describing the Events of Default and demanding Borrowers and Guarantor pay the outstanding principal

balance of the Loan, all unpaid interest, and all other sums due to Plaintiff under the Loan documents.  SUF ¶ 28; Dkt. 42-16.[2]  The events of default have not been cured.  SUF ¶ 87.

## II.    Procedural History

Plaintiff filed a Complaint against Defendants on October 9, 2024, asserting claims for foreclosure of the Mortgage and the Loan Collateral, and judgments of personal liability against Borrowers and recourse liability against Guarantor.  *See* Dkt. 1 ("Compl.") at 21-26. It also sought the appointment of a receiver and injunctive relief.  *See id.* at 26-27.  Plaintiff served Borrowers and Holdings with the Summons and Complaint on December 13, 2024, and served Guarantor on December 19, 2024.  *See* Dkts. 9 to 13.  When Defendants had not made an appearance in advance of the initial pretrial conference scheduled for January 9, 2025, the Court adjourned the conference to February 13, 2025.  Dkt. 16.  Defendants did not appear at the conference on that adjourned date.  Dkt. 21.

Plaintiff filed an Amended Complaint on March 4, 2025, principally adding allegations that Borrowers had not maintained good standing in Delaware and in New York in violation of the Loan Agreement.  *See generally* Dkt. 30 ("AC"); Dkt. 30-19.  Defendants still did not appear and did not answer or otherwise respond to the Amended Complaint, even after the Court *sua sponte* extended its deadline to do so.  Dkt. 39.

On April 2, 2025, Plaintiff moved for partial summary judgment on its foreclosure claims, personal and recourse liability claims, and its claim for injunctive relief.  Dkt. 40.  In support of its motion, it submitted a memorandum of law, the declaration of Jerod Miller along with numerous exhibits attached thereto, and its Rule 56.1 Statement.  *See* Dkt. 41 ("MSJ Br."); Miller Decl.; Dkts. 42-1 to 42-20; SUF.  The following day, Plaintiff moved for

---

[2] Plaintiff had also sent previous default letters on March 8, 2021; February 2, 2022; February 16, 2023; and February 15, 2024.  Dkt. 42-16 at 3.

the appointment of a receiver.  Dkt. 44; Dkt. 45 ("Receiver Br."); Dkt. 46 ("Second Miller

Decl."); Dkt. 47 ("Vogel Decl.").

On April 24, 2025, Guarantor appeared.  Dkt. 59.  The Court informed the parties that

it would treat the motions for summary judgment and to appoint a receiver as unopposed if it

received no response from Guarantor or the other Defendants by May 9, 2025.  Dkt. 60.  The

Court received no response to the motions, nor have the Guarantor or the other Defendants

otherwise communicated with the Court.  *See* Dkt. 61.  The motions are thus fully briefed and

are unopposed.

## DISCUSSION

## I.    **Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on its foreclosure claims (Counts I and

II), its personal and recourse liability claims against Borrowers and the Guarantor respectively

(Counts III and IV), and its claim seeking injunctive relief (Count VI).  Dkt. 40 at 2-3.[3]  No

Defendant has opposed this motion.

---

[3] Plaintiff assumes that New York law applies but does not address choice of law.  *See* MSJ
Br. at 16-17, 19 (citing New York law).  Because this case arises under diversity jurisdiction,
the Court applies the law of the forum state, New York, to determine choice-of-law issues.
*See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see, e.g., Norte v.
Worldbusiness Cap., Inc.*, No. 14-cv-10143 (CM), 2015 WL 7730980, at *5 (S.D.N.Y. Nov.
24, 2015).  The Loan Agreement contains a choice-of-law clause providing that "this
agreement and the obligations arising hereunder shall be governed by, and construed in
accordance with, the laws of the State of New York (without regard to principles of conflicts
of law) applicable to contracts made and performed in such state and any applicable law of the
United States of America."  Loan Agreement § 10.3(a) (further capitalization and emphasis
omitted).  The Mortgage has a similar choice-of-law provision.  *See* Mortgage § 12.1.  "Under
traditional New York choice-of-law rules, absent fraud or a violation of public policy, courts
will uphold a choice-of-law clause so long as the state selected has sufficient contacts with the
transaction."  *Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*, No. 14-cv-
09751 (ER), 2015 WL 5660945, at *9 (S.D.N.Y. Sept. 25, 2015).  New York has sufficient
contacts with the transaction: the Loan Agreement and Mortgage concern property located in
New York, Borrowers are domiciled in New York, and the Mortgage Agreement was
notarized by New York notaries and recorded in New York.  *See* Mortgage at 33; Loan

A.  **Legal Standard**

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (citation omitted) (internal quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."

---

Agreement sched. V (describing subject leases located in New York); SUF ¶¶ 2-3; *see, e.g.*, *Bernstein*, 2015 WL 5660945, at *9 (contacts were sufficient to warrant application of choice-of-law provisions where mortgage loans were notarized and recorded in the forum state and the property itself was in the forum state). Thus, the Court will apply New York law.

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *accord*
*CareandWear II, Inc. v. Nexcha L.L.C.*, 581 F. Supp. 3d 553, 556 (S.D.N.Y. 2022).  In
reviewing an unopposed motion for summary judgment, the court may not grant the motion
"without first examining the moving party's submission to determine if it has met its burden
of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in
support of the summary judgment motion does not meet the movant's burden of production,
then summary judgment must be denied *even if no opposing evidentiary matter is presented*."
*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co.*,
373 F.3d at 244).

### B.  Foreclosure Claims (Counts I and II)

Plaintiff seeks summary judgment on its claim for foreclosure of the Mortgage and on
the Loan Collateral, arguing it has demonstrated its *prima facie* case entitling it to summary
judgment.  MSJ Br. at 16-22.  It also requests that the Court appoint a referee to conduct the
sale of the property.  *Id.* at 21-22.

#### 1.  Foreclosure of the Mortgage (Count I)

Plaintiff has established its entitlement to summary judgment on Count I, its claim for
foreclosure of the Mortgage.  "In a mortgage foreclosure action under New York law, a lender
must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that
debt." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (summary
order) (first citing *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997); and then
citing *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)).  "Under New
York law, a plaintiff in a foreclosure action establishes prima facie entitlement to summary
judgment 'by producing evidence of the mortgage, the unpaid note, and the defendant's
default.'"  *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336 (2d Cir. 2021) (summary order)

(quoting *Wells Fargo Bank, N.A. v. Walker*, 35 N.Y.S.3d 591, 592 (App. Div. 2016)); *see, e.g.*, *JPMorgan Chase Bank, Nat'l Ass'n v. Weinberger*, 37 N.Y.S.3d 286, 289 (App. Div. 2016). "This creates a 'presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.'" *Freedom Mortg. Corp. v. Heirs*, No. 19-cv-01273 (KMK), 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) (quoting *E. Sav. Bank, FSB v. Evancie*, No. 13-cv-00878 (ADS) (WDW), 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014)).

Plaintiff has demonstrated its entitlement to summary judgment for foreclosure of the Mortgage.[4]  First, it has provided the Court with executed copies of the Loan documents, which describe the terms of Borrowers' repayment obligations under the Loan and provide that Borrowers' obligations are secured by, among other things, the Property.  SUF ¶¶ 7-20; Loan Agreement; Note; Mortgage; Dkt. 42-4; AL&R; AAL&R; Dkt. 42-7; Dkt. 42-8. Second, Plaintiff has established that Borrowers defaulted on their obligations under the Loan documents by failing to pay Plaintiff all amounts due on the Loan by the maturity date, and $10,641,807.72 remains unpaid.  SUF ¶¶ 31-33, 88.  Borrowers also did not cure their failure to pay the monthly debt service payment amount on February 6, 2022, November 6, 2023, and

---

[4] Though Plaintiff does not address the matter (and need not, since Defendants have not contested standing to foreclose), Plaintiff also has standing to foreclose on the Mortgage.  *See Weinberger*, 37 N.Y.S.3d at 288 (explaining that when a defendant contests standing to foreclose, "the plaintiff must prove its standing as part of its prima facie showing").  A plaintiff establishes standing in a foreclosure action by "demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note."  *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (summary order) (quoting *Weinberger*, 37 N.Y.S.3d at 288).  Plaintiff has done so by demonstrating it is the holder and/or assignee of the Note, as well as the Loan Agreement, Mortgage, and other Loan documents.  SUF ¶ 27; Dkt. 42-4 (assigning Note to Plaintiff); *see U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-cv-03966 (VEC), 2025 WL 1019112, at *2 (S.D.N.Y. Apr. 4, 2025) (plaintiff established standing by producing the note and showing "it was the assignee of the mortgage at the time of the lawsuit and had been for years").

December 6, 2023.  Miller Decl. ¶ 27; SUF ¶¶ 35-36.  Borrowers' nonpayment of loan obligations establishes Plaintiff's "presumptive right to foreclose."  *See, e.g.*, *Freedom Mortg. Corp.*, 2020 WL 3639989, at \*4 (plaintiff-mortgagee established *prima facie* case and was entitled to foreclose where it produced the note and mortgage, as well as documentation of defendant's nonpayment of loan obligations, and motion for summary judgment was unopposed).

The burden then shifts to Borrowers to make any affirmative showing of a "bona fide defense to the action," *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (summary order) (quoting *Capstone Bus. Credit, LLC v. Imperia Family Realty, LLC*, 895 N.Y.S.2d 199, 201 (App. Div. 2010)), such as "fraud, duress, oppressive or unconscionable actions, or bad faith," *OneWest Bank, NA v. Rubio*, No. 14-cv-03800 (CS), 2015 WL 5037111, at \*2 (S.D.N.Y. Aug. 26, 2015) (citation omitted).  Borrowers, who have not appeared, have not made an affirmative showing that Plaintiff is not entitled to foreclose, nor does the record reveal bad faith, fraud, duress, or otherwise oppressive or unconscionable actions.

Plaintiff has thus established that there is no genuine issue of material fact and it is entitled to judgment as a matter of law on Count I.  *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-cv-03966 (VEC), 2025 WL 1019112, at \*3 (S.D.N.Y. Apr. 4, 2025) (granting motion for summary judgment where plaintiff established *prima facie* case and defendants did not oppose the summary judgment motion or present any evidence to overcome plaintiff's *prima facie* case).

### 2. *Foreclosure on the Loan Collateral (Count II)*

Plaintiff has also established its entitlement to foreclose on the Loan Collateral under the New York Uniform Commercial Code.

"To establish a 'prima facie entitlement to summary judgment' on a claim to foreclose a security interest, a plaintiff must demonstrate the parties entered into a security agreement and that the defendant defaulted on its obligations." *Bank of Am., N.A. v. Ave. Imaging LLC*, No. 21-cv-05201 (VB), 2023 WL 3818549, at *6 (S.D.N.Y. June 5, 2023) (quoting *Norman Realty & Constr. Corp. v. 151 E. 170th Lender LLC*, 187 N.Y.S.3d 595, 596 (App. Div. 2023)). Under New York law, "a security interest is enforceable against the debtor and third parties with respect to collateral only if," among other things, "the debtor has authenticated a security agreement that provides a description of the collateral." N.Y. U.C.C. § 9-203(b)(3)(A). "After default, a secured party . . . may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure . . . ." *Id.* § 9-601(a)(1).

Here, Plaintiff has established both elements of its claim for foreclosure. Plaintiff has produced the Mortgage, which includes a security agreement. Mortgage at 1-2; *id.* § 1.1 (describing the Property, including the Loan Collateral). That security agreement grants Plaintiff, as the holder of the Mortgage, a security interest with respect to the Loan Collateral. *Id.* § 1-3. The Loan Collateral is described and defined in the Mortgage. *Id.* § 1-3; *see also id.* § 1.1 (defining categories included in the Loan Collateral). Plaintiff also has provided the Court with documents establishing that it perfected its security interest in the Loan Collateral and has continued to do so. *See* Dkts. 42-9 to -15; Miller Decl. ¶¶ 18-23. Plaintiffs have also established undisputed evidence demonstrating that Borrowers defaulted on their obligations under the Loan documents by not making payments on the loans, as discussed above. *See supra* p. 12-13. Thus, Plaintiff has established its *prima facie* case that it is entitled to summary judgment on its foreclosure of security interest claim against Borrowers. Borrowers have not produced evidence raising a genuine issue of material fact about any defense given

that they have not opposed the motion, and Plaintiff has accordingly established its entitlement to judgment as a matter of law on Count II.

### 3. Appointment of a Referee

Plaintiff asks the Court to compute and grant damages in the amount of $10,641,807.72 as the unpaid principal amount of the Loan, as well as other amounts due under the Loan Agreement, and direct sale of the Property by a referee.  Dkt. 40 at 2; MSJ Br. at 22.  "Pursuant to [N.Y. Real Property Actions and Proceedings Law § 1321], the trial court has the authority to compute the amount owed or appoint a referee to do the same." *Miss Jones LLC v. Shahid*, No. 17-cv-00716 (AMD) (LB), 2022 WL 4642716, at *9 (E.D.N.Y. Sept. 30, 2022) (citation omitted); *see* N.Y. Real Prop. Acts § 1321(1) ("If the defendant fails to answer . . . upon motion of the plaintiff, the court shall ascertain and determine the amount due, or direct a referee to compute the amount due . . . .").  The Court will do the latter and will direct the Plaintiff to file a proposed judgment of foreclosure providing for the sale of the Property and Loan Collateral and requesting the appointment of a proposed referee to calculate the total amount owed to Plaintiff, effectuate the sale, and disperse funds from the sale. *See id.*  Plaintiff's request to seek attorneys' fees, costs, and expenses after the sale of the Property, *see* MSJ Br. at 22 n.5, is also granted.

### C. Personal and Recourse Liability Claims (Counts III and IV)

Plaintiff also moves for summary judgment on Counts III and IV, its claims against Borrowers and Guarantors for their personal and recourse liability for the payment of the outstanding principal of the Loan, all interest accrued and unpaid, and all other sums due to Plaintiff.  MSJ Br. at 23-25.

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."

*U.S. Bank Nat'l Ass'n v. NNN 200 Galleria, LLC*, No. 13-cv-00414 (AKH), 2014 WL

11380950, at *4 (S.D.N.Y. July 21, 2014) (citing *Fischer & Mandell, LLP v. Citibank, N.A.*,

632 F.3d 793, 799 (2d Cir. 2011)), *aff'd sub nom. U.S. Bank Nat'l Ass'n v. NNN Realty*

*Advisors, Inc.*, 614 F. App'x 548 (2d Cir. 2015) (summary order); *see also CP III Rincon*

*Towers, LLC v. Cohen*, No. 10-cv-04638 (JMF), 2022 WL 61318, at *7 (S.D.N.Y. Jan. 6,

2022) (same for breach of guaranty claim).  The Court begins with Borrowers before turning

to Guarantor.

      Plaintiff has established there is no dispute of material fact regarding Borrowers'

personal liability under the terms of the Loan Agreement.  Under Section 3.1(c) of the Loan

Agreement, Borrowers are personally liable for the payment of the outstanding principal of

the Loan, all interest accrued and unpaid, and all other sums due to Plaintiff under the Loan

documents if, under Section 3.1(c)(ii)(G) of the Loan Agreement, Borrowers fail "to obtain

[Plaintiff's] prior written consent to any Transfer," SUF ¶¶ 77, or, under Section 3.1(c)(ii)(A)

of the Loan Agreement, Guarantor files a "voluntary petition under the Bankruptcy Code or

any other federal or state bankruptcy or insolvency law," *id.* ¶ 78.  Here, the Loan

Agreement's personal liability provisions were triggered by (1) Borrowers' execution of the

Assignment and Assumption of the ground lease in favor of Holdings without obtaining

Plaintiff's prior written consent and (2) Guarantor's filing of the Chapter 13 Case and Chapter

11 Case.  SUF ¶¶ 61, 65; Loan Agreement § 3.1(c).  As a result, under the terms of the Loan

Agreement, Borrowers are personally liable to Plaintiff for payment of the outstanding

principal balance of the loan, all accrued and unpaid interest, and all other sums due to

Plaintiff under the Loan documents.  *See U.S. Bank Nat'l Ass'n*, 2014 WL 11380950, at *3-4

(granting summary judgment in favor of lender that established transfer in violation of term of

loan agreement, triggering full recourse liability).

Likewise, there is no dispute of material fact that Guarantor is liable under the Recourse Guaranty. Pursuant to the Recourse Guaranty signed and executed by Guarantor, Guarantor irrevocably and unconditionally guaranteed to Lender the "Guaranteed Obligations," defined as the obligations and liabilities for which Borrowers are personally liable under Section 3.1 of the Loan Agreement. SUF ¶ 75. These obligations and liabilities include Borrowers' personal liability to Plaintiff for the payment of the outstanding principal of the Loan, all accrued and unpaid interest, and all other sums due to Plaintiff under the Loan documents if Borrowers fail to obtain Plaintiff's prior written consent to any transfer or if Guarantor files a voluntary petition under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law. *Id.* ¶¶ 77-78. Thus, Guarantor's liability under the Recourse Guaranty is triggered by the acts that gave rise to Borrowers' personal liability — that is, Borrowers' execution of the Assignment and Assumption of the ground lease in favor of Holdings, and Guarantor's bankruptcy petitions. Thus, Guarantor is jointly and severally liable for payment of the outstanding principal of the Loan, all accrued and unpaid interest, and all other sums due to Plaintiff under the Loan documents.

The Court grants Plaintiff summary judgment in its favor on Counts III and IV.

### 4. Injunctive Relief (Count VI)

Finally, Plaintiff seeks an order requiring Borrowers to turn over to Plaintiff any rents collected from the Property from and after the first of the monetary Events of Default, on July 1, 2020, *see* SUF ¶ 47, and enjoining Borrowers and Holdings from collecting any further rents from the Property. MSJ Br. at 26.

Under New York law, "[a] rent assignment clause may be a source of additional security for a mortgage loan, or, alternatively, it may create an absolute and unconditional assignment." *In re S. Side House, LLC*, 474 B.R. 391, 402-03 (Bankr. E.D.N.Y. 2012).

"[W]hen an assignment is absolute, title to the rents vests in the lender upon execution of the agreement, and the borrower is granted a revocable license to collect the rents that may terminate immediately and permanently upon default," *id.* at 403, while "a mortgage that includes an assignment of rents as additional security does not automatically entitle the mortgagee to the rents and profits." *Builders Bank v. Rockaway Equities, LLC*, No. 08-cv-03575 (MDG), 2011 WL 4458851, at *10 (E.D.N.Y. Sept. 23, 2011) (collecting cases). "When an assignment is for additional security, a mortgagee generally must take certain affirmative steps after default in order to trigger its rights." *In re S. Side House, LLC*, 474 B.R. at 404. "Thus, an assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents." *641 Ave. of Ams. Ltd. P'ship v. 641 Assocs., Ltd.*, 189 B.R. 583, 591 (S.D.N.Y. 1995) (collecting cases).

Plaintiff has established it is entitled to the Rents under the AL&R and the Mortgage. Section 7.1(h) of the Mortgage and Section 3.1 of the AL&R provide that, upon the occurrence of a default, Borrowers' license to collect, receive, use, and enjoy the rents from the property is automatically revoked. *See* Mortgage § 7.1(h) (license to collect Rents "shall automatically be revoked" "[u]pon the occurrence and during the continuance of any Event of Default"); AL&R § 3.1 ("Upon or at any time after the occurrence of an Event of Default, the license granted to Borrower [to collect Rents] shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties . . . ."). Assuming without deciding that the assignment was for additional

security,[5] Plaintiff was obliged to take affirmative steps toward asserting its interests to gain

an enforceable interest in the Rents.  It has done so by, among other things, initiating the

instant foreclosure action in this District.  *See 641 Ave. of Ams. Ltd. P'ship*, 189 B.R. at 591

(plaintiff had enforceable interest in the rents where it took affirmative steps to assert its

interests, including instituting a foreclosure action); *Builders Bank*, 2011 WL 4458851, at *11

(same).  Plaintiff has established its entitlement as a matter of law to collect the Rents, and the

Court will order Borrowers and Holdings to turn over all Rents collected since the first of the

Events of Default and enjoin Borrowers and Holdings from collecting any further Rents.

## II.    Appointment of Receiver

Plaintiff also moves the Court to appoint a receiver.  Dkt. 44.  "[A] federal court has

the equitable power to appoint a receiver in order to protect a party's interest."  *Kairos Credit*

*Strategies Operating P'ship v. Friars Nat'l Ass'n, Inc.*, No. 23-cv-02960 (JPO), 2023 WL

3675921, at *2 (S.D.N.Y. May 26, 2023) (citing Fed. R. Civ. P. 66).  "The appointment of a

receiver is considered to be an extraordinary remedy, and should be employed cautiously and

granted only when clearly necessary to protect plaintiff's interests in the property."  *Rosen v.*

*Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (brackets, ellipsis, and internal quotation marks

omitted) (citation omitted).  "Whether a federal court should appoint a receiver in a diversity

action is governed by federal law."  *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866

---

[5] While the language of the AL&R provides that the assignment is "not an assignment for
additional security only," AL&R § 2.1, "the language used in the assignment instrument itself
is not determinative of what rights are actually transferred," *LT Propco, LLC v. Carousel Ctr.
Co.*, 893 N.Y.S.2d 395, 396 (App. Div. 2009) (citation omitted).  However, the Court need not
determine whether the assignment was given as security for the Loan or served to transfer title
to the Rents because Plaintiff has an enforceable interest regardless of the basis for the
assignment.  If the assignment to Plaintiff was absolute, then Borrowers' revocable license to
collect Rents terminated immediately upon default and Plaintiff did not need to take
affirmative steps to gain an enforceable interest in the Rents.  *See In re S. Side House, LLC*,
474 B.R. at 403.

F. Supp. 2d 247, 249 (S.D.N.Y. 2012) (citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365

(S.D.N.Y. 2000)).  Courts in this Circuit consider the following five factors in determining

whether to appoint a receiver:

> [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the
> property being lost, concealed, injured, diminished in value, or squandered; [3]
> the inadequacy of the available legal remedies; [4] the probability that harm to
> plaintiff by denial of the appointment would be greater than the injury to the
> parties opposing appointment; and [5], in more general terms, plaintiff's probable
> success in the action and the possibility of irreparable injury to his interests in the
> property.

*Kairos Credit*, 2023 WL 3675921, at *2 (alterations in original) (quoting *Nesbitt Bellevue*

*Prop.*, 866 F. Supp. 2d at 249-50).

Plaintiff argues that the Court should appoint a receiver because (1) the Mortgage

provides Plaintiff with the right to seek the appointment of the receiver in event of a default

by Borrowers, Receiver Br. at 7-8; and (2) appointment of a receiver is necessary to prevent

the diminishment of the Property's value, *id.* at 8-10.  Certain factors support appointment of

a receiver.  First, the Mortgage provides that Plaintiff may seek "appointment of a receiver"

"[u]pon the occurrence and during the continuance of any Event of Default," "without notice

and without regard for the adequacy of the security for the Debt and without regard for the

solvency of any Borrower, any guarantor or indemnitor with respect to the Loan or any Person

otherwise liable for the payment of the Debt or any part thereof."  Mortgage § 7.1(g).  While

"the existence of a provision authorizing the application for a receiver in the event of a

default[] 'strongly supports the appointment of a receiver' when there is a default," *Nesbitt*

*Bellevue Prop.*, 866 F. Supp. 2d at 250 (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d

93, 97 (2d Cir. 1988)), contrary to Plaintiff's assertion that the provision gives it the

"unconditional right to the appointment of a receiver," Receiver Br. at 8, the "mere existence

of such contractual provision does not . . . dispose of the Court's inquiry in plaintiff's favor,"

*Wells Fargo Bank, Nat'l Ass'n v. Prince 26, LLC*, No. 22-cv-05586 (PAE) (OTW), 2023 WL
5152420, at *8 (S.D.N.Y. Aug. 10, 2023) (quoting *Wells Fargo Bank, Nat'l Ass'n v. 3708
Vestal Pkwy E., LLC*, No. 22-cv-04714 (ER), 2023 WL 4741216, at *4 (S.D.N.Y. July 25,
2023)).  "[T]he appointment of a receiver in equity is not a substantive right but is a remedy
that is ancillary to the primary relief prayed for in the suit," often "where a plaintiff has
brought a foreclosure action and requests a temporary receiver pending the foreclosure."
*Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 254-55 (citation omitted) (collecting cases).  Thus,
"the burden remains on the plaintiff to make an adequate showing that such an appointment is
warranted."  *Prince 26, LLC*, 2023 WL 5152420, at *8 (internal quotation marks omitted)
(citation omitted).  Second, Borrowers' failure to pay certain taxes on the Property, *see* Miller
Decl. ¶ 30, risks diminishment of the value of the property.  *See Wilmington Tr., Nat'l Ass'n v.
31 Prince St., LLC*, No. 22-cv-05855 (JGK), 2023 WL 414249, at *3 (S.D.N.Y. Jan. 25, 2023)
(borrowers' failure to pay taxes risked diminution of value, even where lender advanced
money to pay the unpaid taxes, since it "risk[ed] a tax lien being levied against the
[p]roperties").  Third, Plaintiff has shown a high likelihood of success on the merits —
indeed, the Court has granted summary judgment in favor of Plaintiff on its foreclosure claim.

However, in light of the fact that the Court has granted summary judgment as to the
foreclosure claims (the primary relief sought), the Court denies Plaintiff's motion for the
appointment of a receiver.  "[T]he dispositive issue is whether the appointment of a receiver is
clearly necessary to protect plaintiff's interests in the property."  *Wilmington Tr.*, 2023 WL
414249, at *4 (alteration in original) (quoting *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 254).
Since the Court has granted the primary relief of foreclosure on the mortgaged Property, it has
not shown the appointment of a receiver is "clearly necessary" to protect its interests in the
property.  *See Wells Fargo Bank Nat'l Assn v. 366 Realty LLC*, No. 17-cv-03570 (SJ) (RER),

2021 WL 9494173, at *5 (E.D.N.Y. Mar. 16, 2021) ("Because the Court is granting the motion for summary judgment, Plaintiff is entitled to possession of the property once it forecloses on the mortgage." (citing *Courchevel 1850 LLC v. Alam*, No. 17-cv-00785 (JBW) (SMG), 2019 WL 9656366, at *13 (E.D.N.Y. Oct. 30, 2019), *report and recommendation adopted*, 464 F. Supp. 3d 475 (E.D.N.Y. 2020))).  Indeed, "courts in this District that have appointed receivers have typically done so when such an appointment is sought *before* the plaintiff has moved for foreclosure or other relief."  *Prince 26, LLC*, 2023 WL 5152420, at *9 (collecting cases).  By contrast, courts in this Circuit have denied appointment of a receiver where they contemporaneously granted summary judgment as to foreclosure claims.  *See, e.g.*, *id.*; *Wells Fargo Bank, Nat'l Ass'n v. 5615 N. LLC*, No. 20-cv-2048 (VSB), 2022 WL 15523689, at *8 (S.D.N.Y. Oct. 27, 2022) (denying motion to appoint receiver as moot where motion for summary judgment on foreclosure claim was contemporaneously granted, without prejudice to renewal of the motion); *366 Realty LLC*, 2021 WL 9494173, at *5 (denying appointment of receiver "without more information" where court had granted judgment on foreclosure claims and plaintiff only "generally claim[ed]" risk of diminution of property); *Courchevel 1850 LLC*, 2019 WL 9656366, at *13 (recommending motion to appoint a receiver be denied because the report and recommendation recommended granting summary judgment on claim for foreclosure, which would "shortly entitle [plaintiff] to possession of the [p]roperty" (first alteration in original) (citation omitted)).

The reasoning in *Prince 26, LLC* is persuasive: there, the court denied the motion for appointment of a receiver where it had granted the plaintiff's motion for summary judgment on the claims for foreclosure, reasoning that the grant of summary judgment on those claims "[might] well set in motion events that moot the need for court appointment of a receiver," 2023 WL 5152420, at *8, even where the mortgage agreement provided for appointment of a

receiver and the plaintiff had failed to pay taxes, *id.* at *9.[6]  Here too, the Court's grant of summary judgment and appointment of a referee may moot the need for the Court to appoint a receiver — indeed, the Amended Complaint indicates that the appointment of receiver is sought "during the pendency of this action," AC ¶ 105.  *See Prince 26, LLC*, 2023 WL 5152420, at *9 n.5 (noting lack of clarity surrounding whether plaintiff sought appointment of receiver "in the event that it prevails on its foreclosure claims, or only to cover the period beforehand" where plaintiff used similar language in their motion for appointment of a receiver).  The Court thus denies the motion for appointment of a receiver without prejudice to Plaintiff's renewal of its application based on a showing that foreclosure and the relief granted herein is inadequate to protect its interests.

## CONCLUSION

For the foregoing reasons, the motion for partial summary judgment is GRANTED and the motion to appoint a receiver is DENIED without prejudice.  Summary judgment is entered in favor of Plaintiff on Counts I, II, III, IV, and VI.  Borrowers and Holdings are ordered to turn over all Rents collected since the first of the Events of Default and Borrowers and Holdings are enjoined from collecting any further Rents.

On or before **June 4, 2025**, Plaintiff shall file a proposed judgment.  The proposed judgment shall encompass the relief granted here, as well as provide for sale of the Property

---

[6] As in *Prince 26, LLC*, any future motion would likely "require a stronger showing than the one provided here," since "[a]side from evidence that [Borrowers and Guarantor] have failed to forward rent payments and pay taxes, [Plaintiff] makes largely conclusory allegations," *id.* at *9 n.6, that Borrowers and Holdings are "allowing the Property to fall into a downward spiral which can only be stopped by the appointment of a receiver," Receiver Br. at 9; *cf. Prince 26, LLC*, 2023 WL 5152420, at *9 n.6 (plaintiff's allegation that "[w]ith the status of the Property unknown to [p]laintiff and seemingly slipping into a state of abandonment, risk of waste and dissipation or diminution in the value of [p]laintiff's collateral seems likely, if not certain" was insufficient to show necessity of the appointment of a receiver (alteration in original)).

and the appointment of a proposed referee to (a) calculate the total amount owed to Plaintiff, (b) effectuate the sale, and (c) disperse funds from such a sale.  The Plaintiff shall inform the Court at that time whether the Court may enter final judgment and close the case.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 44 and 45.

Dated: May 21, 2025
      New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge

24