UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE15 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,<br><br>                                         Plaintiff,<br><br>                    - against -<br><br>840 WESTCHESTER AVENUE NMA, LLC, 840 WESTCHESTER AVENUE NPPN, LLC, 840 WESTCHESTER AVENUE NPPS, LLC, 840 WESTCHESTER HOLDINGS LLC, BERNARD PUTTER, and DOES 1 through 100,<br><br>                                         Defendants. | Case No. 1:24-cv-7680 (JLR) |

## [PROPOSED] JUDGMENT OF FORECLOSURE AND SALE

On the Complaint filed in this action on the 9th day of October, 2024, the Summons issued the 10th day of October, 2024, and Notices of Pendency filed in this action on the 1st day of April, 2025, the Amended Complaint, filed in this action on the 4th day of March, 2025; the Notice of Motion (the "Motion") of Plaintiff Wells Fargo Bank, National Association, as Trustee for the Benefit of the Holders of COMM 2014-CCRE15 Mortgage Trust Commercial Mortgage Pass-Through Certificates, as Lender ("Plaintiff") for Summary Judgment dated April 2, 2025, the Statement of Material Facts Pursuant to Local Rule 56.1, dated April 2, 2025, the Declaration of Jerod Miller, dated April 2, 2025, including an itemization of the sum of the amounts owed to Plaintiff, and the exhibits annexed thereto; Plaintiff's Memorandum of Law, dated April 2, 2025; from which it appears this action was brought to foreclose (i) a certain leasehold and other interests in certain parcels of commercial property located in the City of New York, County of Bronx, State

of New York, commonly known by the street addresses of 840 and 848 Westchester Avenue, Bronx, NY 10459, and 867 Longwood Avenue, Bronx, NY 10459, with the following tax map designations: Parcel 1 (Block 2689, Lot 1); Parcel 2 (Block 2689, Lot 48); Parcel 3 (Block 2689, Lot 47); and (ii) certain other "Property" described in that certain Consolidated, Amended and Restated Leasehold Mortgage and Security Agreement dated as of December 27, 2013 (as amended and assigned, the "Mortgage"), which was filed for record February 3, 2014, in the City Register as CRFN 2014000041379 (collectively, the "Property"); and after due deliberation having been had thereon, this Court granted in part with prejudice Plaintiff's Motion as set forth in the Opinion and Order by the Honorable Jennifer L. Rochon dated May 21, 2025 (the "Opinion and Order"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1; and

UPON the findings of fact and the conclusions of law as set forth by the Court in the Opinion and Order dated May 21, 2025; and

UPON proof that each of the Defendants 840 Westchester Avenue NMA, LLC ("NMA"), 840 Westchester Avenue NPPN, LLC ("NPPN"), and 840 Westchester Avenue NPPS, LLC ("NPPS" and collectively with NMA and NPPN, "Borrowers"), Defendant Bernard Putter ("Guarantor") and Defendant 840 Westchester Holdings LLC ("Holdings") herein has been duly served with the Summons and Complaint in this action, as well as the Amended Complaint in this action, and that only Guarantor has appeared in this action and neither Guarantor nor any other Defendant has opposed the Motion; and

Plaintiff has complied with the applicable rules for securing this Judgment of Foreclosure and Sale. Accordingly, the Clerk of Court is respectfully directed to enter this Judgment of Foreclosure and Sale against Defendant Borrowers, Guarantor and Holdings. It is further hereby:

ORDERED, ADJUDGED AND DECREED that Frank Bruno Jr., Esq. with an address of the Law Office of Frank Bruno Jr., 69-09 Myrtle Ave, Glendale, New York 11385, and telephone number of (718) 418-5000, is hereby appointed referee (the "Referee"), in accordance with RPAPL § 1321, to compute the amount due to Plaintiff and to examine whether the mortgage property may be sold in parcels; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall compute and report within thirty (30) days of entry of this Judgment of Foreclosure and Sale, subject to further extensions at the discretion of the Court; and it is further

ORDERED, ADJUDGED AND DECREED that, if necessary, the Referee may take testimony pursuant to RPAPL § 1321; and it is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment") and §36.2 (d) ("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to CPLR 8003(a) which sets the statutory fee of $350 and allows a greater fee in the discretion of the court, Plaintiff shall pay a fee of $500 (five hundred dollars) to the Referee for the computation of the amount due and upon the filing of the Referee's report, and the Referee shall not request or accept additional

compensation for the computation unless it has been fixed by the Court in accordance with CPLR 8003(a); and it is further

ORDERED, ADJUDGED AND DECREED that upon the Referee's completion of the report as referenced herein, the Plaintiff shall promptly submit a letter motion to the Court requesting entry of a Supplemental Judgment of Foreclosure and Sale that will set forth and determine the amount due to Plaintiff (the "Mortgage Amount") and direct the sale of the Property and approve other necessary relief requested by Plaintiff; and it is further

ORDERED, ADJUDGED AND DECREED that the Property including, without limitation, the personal property included in the list of personal property to be included in the sale provided by Plaintiff to the Referee prior to the Referee's publication of the public notice of the sale described below, but excluding any management agreement, leasing agreement or other contract or agreement with any Borrower or Guarantor or any affiliate of any Borrower or Guarantor and any other property included in a list of personal property to be excluded from the sale provided by Plaintiff to the Referee prior to the Referee's publication of the public notice of the sale described below, or such part thereof as may be sufficient to discharge the Mortgage Amount, the expenses of the sale, and the costs of this action as provided by the RPAPL, be sold free and clear of any and all liens, claims, encumbrances and interests of any and all kinds, except for the encumbrances expressly described on Exhibit 1 attached hereto ("Permitted Encumbrances"), within 90 days of the date of this Judgment of Foreclosure and Sale, at a public auction at a location to be determined at the discretion of the Referee, and to occur by and under the direction of the Referee; that said Referee give public notice of the time and place of such sale in accordance with RPAPL § 231 in *The Bronx Times Reporter*; and it is further

ORDERED, ADJUDGED AND DECREED that if the Referee does not conduct the sale within 90 days of the date of this Judgment of Foreclosure and Sale, in accordance with CPLR 2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representative; and it is further

ORDERED, ADJUDGED AND DECREED that at the time of sale the Referee shall accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were physically present to submit said bid; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall accept the highest bid offered by a bidder, who shall be identified upon the court record and who shall present government-issued photo identification to the Referee, and shall require that the successful bidder immediately execute Terms of Sale for the purchase of the Property, and pay to the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED that, in the event the first successful bidder fails to execute the Terms of Sale immediately following the bidding upon the subject Property or fails to immediately pay the ten percent (10%) deposit as required, the Property shall immediately and on the same day be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED, that, in the event a party other than the Plaintiff becomes the purchaser at the sale, the closing of title shall be had at the office of the

Referee or at such other location as the Referee shall determine thirty (30) days after such sale unless otherwise stipulated by all parties to the sale, and that said Referee shall execute to the purchaser or purchasers assignments of leasehold estates and deeds of conveyance to the fee interests in real property sold, assignments of subleases under which each of the Borrowers is the sublandlord described on Exhibit 2 attached hereto ("Permitted Subleases"), bills of sale to personal property sold, the closing statement, transfer tax forms and all other documents necessary or desirable in connection with the transfer of the sold portion of the Property, and it is further

ORDERED, ADJUDGED AND DECREED that in the event that such successful bidder shall fail to close on the date set by the Referee, then the successful bidder shall lose and forfeit its deposit, and it is further

ORDERED, ADJUDGED AND DECREED that in the event a party other than Plaintiff becomes the purchaser at the sale that the Referee, on receiving the proceeds of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all taxes, assessments, sewer rents, or water rates, which are, or become, liens on the property at the time of sale, with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED that said Referee then deposit the balance of said proceeds of sale in his/her own name as Referee in any local banking institution insured by the Federal Deposit Insurance Corporation and shall thereafter make the following payments and his/her checks drawn for that purpose shall be paid by said depository, and it is further

ORDERED, ADJUDGED AND DECREED that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom the following amounts in the following order:

FIRST:  The Referee's statutory fees for conducting the sale, in accordance with CPLR 8003(b), not to exceed $750.00. Plaintiff shall compensate the Referee in the sum of $350 for each adjournment or cancelation of the auction, unless the Referee caused the delay.

SECOND:  The expenses of the sale and the advertising expenses as shown on the bills presented to said Referee and certified by him/her to be correct, duplicate copies of which shall be annexed to the Report of Sale.

THIRD:  Pursuant to RPAPL § 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the Property by a city agency which have priority over the foreclosed mortgage, which are liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment.

FOURTH:  Said Referee shall also pay to the Plaintiff or its attorneys the Mortgage Amount and any other sum as set forth in a Supplemental Judgment of Foreclosure and Sale to be entered at a later date as requested pursuant to a subsequent letter motion submitted by Plaintiff.

FIFTH:  Surplus monies arising from the sale shall be paid into court by the Referee conducting the sale within five days after receipt in accordance with RPAPL §1354(4); and it is further

ORDERED, ADJUDGED AND DECREED that if the Plaintiff is the purchaser of the portion of the Property sold by the Referee, or in the event that the rights of the purchasers at such sale and the Terms of Sale under this Judgment of Foreclosure and Sale shall be assigned to and be acquired by, or assigned by and transferred by, the Plaintiff, and a valid assignment thereof is

filed with said Referee, said Referee shall not require Plaintiff or its assignee to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, assignments of leasehold estates and deeds of conveyance to the fee interests in real property sold, assignments of the Permitted Subleases, bills of sale to personal property sold, the closing statement, transfer tax forms and all other documents necessary or desirable in connection with the transfer of the sold portion of the Property, upon the payment to said Referee of the amounts specified in items marked "First", "Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the amounts specified in "Second" and "Third" above when it is recording the assignments of leasehold estates and deeds of conveyance; that the balance of the bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due Plaintiff as specified in paragraph "Fourth" above. The Referee shall pay any surplus (i.e. any amount of the bid by Plaintiff in excess of the Mortgage Amount) after applying the balance of the bid to the Plaintiff, who shall deposit it in accordance with paragraph "Fifth" above; and it is further

ORDERED, ADJUDGED AND DECREED that all expenses of recording the Referee's assignments of leasehold estate and deeds of conveyance, including real property transfer taxes, which are not secured by a lien upon any of the Property at the time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any and all transfer taxes shall be paid in accordance with Tax Law §1404; and it is further

ORDERED, ADJUDGED AND DECREED that each Borrower must pay to Plaintiff the Mortgage Amount per the Supplemental Judgment of Foreclosure and; and if the sale proceeds distributed in accordance with paragraphs "First," "Second, "Third", and "Fourth" above are insufficient to pay Plaintiff the entire Mortgage Amount per the Supplemental Judgment of Foreclosure and Sale, as set forth in paragraph "Fourth" above, each  Borrower must pay to

Plaintiff and Plaintiff is entitled to recover from each Borrower, the deficiency equal to the positive difference, if any, of the Mortgage Amount minus the amount of sales proceeds paid or credit bid credited to Plaintiff under the paragraph "Fourth" above in accordance with RPAPL § 1371; and it is further

ORDERED, ADJUDGED AND DECREED that Guarantor must pay to Plaintiff  the Mortgage Amount per the Supplemental Judgment of Foreclosure and Sale; and if the sale proceeds distributed in accordance with paragraphs "First," "Second, "Third", and "Fourth" above are insufficient to pay Plaintiff the entire Mortgage Amount per the Supplemental Judgment of Foreclosure and Sale, as set forth in paragraph "Fourth" above, Guarantor must pay to Plaintiff and Plaintiff is entitled to recover from Guarantor, the deficiency equal to the positive difference, if any, of the Mortgage Amount minus the amount of sales proceeds paid or credit bid credited to Plaintiff under the paragraph "Fourth" above in accordance with RPAPL § 1371; and it is further

ORDERED, ADJUDGED AND DECREED that the Property sold pursuant to this Judgement of Foreclosure and Sale is to be sold in "as is" physical order and condition, subject to any physical condition that an inspection of the Property would disclose; any facts regarding the physical condition of the Property that an accurate survey of the Property would show; the Permitted Encumbrances; any applicable building and zoning ordinances of the municipality in which the Property is located and possible violations of same; and any equity of redemption of the United States of America to redeem the property within 120 days from the date of sale; the sale of the Property is free and clear of any equity of redemption of any Borrower or Guarantor and any such right of redemption is automatically extinguished by the sale pursuant to this Judgement of Foreclosure and Sale; and it is further

ORDERED, ADJUDGED AND DECREED that the purchaser be let into possession of the sold Property upon production in hand of the Referee's assignment of leasehold estate and deed of conveyance or upon personal service of the Referee's assignment of leasehold estate and deed of conveyance in accordance with CPLR 308; and it is further

ORDERED, ADJUDGED AND DECREED that the Defendants in this action and all persons and entities claiming through them and any person or entity obtaining an interest in the sold Property after the filing of the Notice of Pendency (other than the persons and entities holding the Permitted Encumbrances) are barred and foreclosed of all right, claim, lien, title, and interest in the sold Property after the sale of such Property and must deliver possession thereof to the purchaser immediately upon delivery of the Referee's assignment of leasehold estate and deed of conveyance to such purchaser; and it is further

ORDERED, ADJUDGED AND DECREED that each of the Defendants must turn over to the purchaser at the time of the sale pursuant to this Judgment of Foreclosure and Sale any and all cash and other liquid asserts and other personal property that are part of the Property and rights and claims to any of the foregoing. Any and all personal property and fixtures owned by any Defendant that remain on the Property after the date of sale pursuant to this Judgment of Foreclosure and Sale shall be deemed abandoned by such Defendant and owned by the purchaser of the sold Property; and it is further

ORDERED, ADJUDGED AND DECREED that each Defendant must turn over to the purchaser at the time of the sale pursuant to this Judgment of Foreclosure and Sale all "Rents" (as defined in the Mortgage) collected or received after July 29, 2017, which was the date of the occurrence of the first "Event of Default" (as defined in the Mortgage), and each of the Defendants

is enjoined from collecting or receiving any Rent after the date of this Judgment of Foreclosure and Sale.

ORDERED, ADJUDGED AND DECREED that within 30 days after completing the sale and executing the proper conveyance to the purchaser, unless the time is extended by the Court, the Referee shall file, or cause to be filed through Plaintiff's counsel, with the Court a report under oath of the disposition of the proceeds of the sale in accordance with RPAPL §1355(1); and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff shall serve a copy of this Judgment of Foreclosure and Sale upon the Defendants and any other parties or persons entitled to service, including the Referee appointed herein; and it is further

ORDERED, ADJUDGED AND DECREED that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this Judgment of Foreclosure and Sale stating whether the sale has occurred and the outcome thereof.

The legal description of the Property referred to herein is attached hereto as <u>Exhibit 3</u>.

**ENTER**:

*Jennifer Rochon*

**Honorable Jennifer L. Rochon**
**United Stated District Judge**
**For the Southern District of New York**

DATED:   June 6, 2025
New York, New York

### Exhibit 1
### Permitted Encumbrances

1. Each of the subleases described on Exhibit 2 attached hereto with the subtenant described on Exhibit 2 attached hereto, as a subtenants only of the portion of the Property designated on Exhibit 2 attached hereto, with no option to purchase, right of refusal to purchase, right of  offer to purchase, or other right to purchase, any or all of the Property.

2. Covenants and Restrictions in Liber 569 Cp. 460 (Westchester County), repeated in Liber 647 Cp. 80 (Westchester County), and Liber 678 Cp. 255 (Westchester County).

3. Declaration of Zoning Lot Restrictions made by Hyun Corp, 867 Longwood Corp., Pillar Enterprise, Inc. and Slane Properties, LLC dated 8/12/2013, recorded 9/23/2013 in CRFN 2013000391011. (Affects Parcels 1, 2 and 3)

**Exhibit 2**
**(List of subleases, subtenants and sublease spaces)**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **RENT ROLL** | | | | | | | |
| Tenant Name | Suite | Area (SF) | Start Date | End Date | Mos. Remain | Contract Rent/SF | Annual Rent | Expense Structure | Tenancy Type | Capitalize @ Mkt | Market $/SF/Yr | Annual Mkt. Rent | Capitalized Rent |
| St. Dominics Home | 235-4 | 14,059 | Jun - 2008 | May-28 | 50 | $42.98 | $604,256 | Semi-Net | Office | | $42.50 | $597,508 | $604,256 |
| Empire Parking | Garage | | Mar - 2010 | Feb-30 | 70 | — | $71,350 | Gross | Parking Garage | | — | $111,000 | $71,350 |
| Dollar Tree Stores (Dollar General) | 235-2 | 8,337 | Sep - 2013 | Aug-28 | 53 | $29.55 | $246,358 | Modified Gross | Side Street Midblock Retail | | $35.00 | $291,795 | $246,358 |
| Montfiore Hospital | 235-3 | 11,807 | Feb - 2022 | Jul-32 | 100 | $43.13 | $509,236 | Semi-Net | Office | | $42.50 | $501,798 | $509,236 |
| Vacant Corner Retail (Former Rite Aid) | 235-1 | 13,760 | | — | — | | | | Main Street Corner Retail | Yes | $100.00 | $1,376,000 | $1,376,000 |
| Totals/Avg. | Occupied | 34,203 | 71.3% | | | $41.84 | $1,431,200 | | | | $60.01 | $2,878,100 | $2,807,200 |
| | Vacant | 13,760 | 28.7% | | | — | — | | | | | | |
| | Total | 47,963 | 100.0% | | | | | | | | | | |

Note: the above rent roll is a reconstructed rent roll from May 1, 2024.

## Exhibit 3
### (Description of the "Property" set forth in the Mortgage)

All of the real, personal, tangible and intangible property, rights, interests and estates owned on December 27, 2013, or thereafter acquired, by any Borrower (collectively, the ***"Property"***) including, without limitation, the following:

(a)     <u>Land.</u>  The real property, and/or leasehold interest in the real property, described in <u>Exhibit A</u> attached hereto and made a part hereof (the ***"Land');***

(b)     <u>Ground Lease.</u> The ground lease described in <u>Exhibit B</u> attached hereto and made a part hereof (the ***"Ground Lease"***) including all assignments, modifications, amendments, restatements, supplements, extensions and renewals of the Ground Lease, and all credits, deposits, options, proceeds, privileges and rights of Borrower as tenant under the Ground Lease, including, but not limited to, the right, if any, to renew or extend the Ground Lease for a succeeding term or terms, the right, if any, to exercise an option to purchase the real property leased pursuant to the Ground Lease, and also including all the right, title, claim or demand whatsoever of Borrower either in law or in equity, in possession or expectancy, of, in and to Borrower's right, as tenant under the Ground Lease, to elect under Section 365(h)(I) of Title 11 U.S.C.A. § 101 et seq. and the regulations adopted and promulgated thereto (as the same may be amended from time to time, the ***"Bankruptcy Code"***) to terminate or treat the Ground Lease as terminated or to consent to the transfer of the Ground Lessor's interest in the Ground Lessor Property or any portion thereof free and clear of the Ground Lease under Section 363 of the Bankruptcy Code in the event (i) of the bankruptcy, reorganization or insolvency of Ground Lessor, or any one of them, and (ii) (A) the rejection of the Ground Lease by such Ground Lessor, or any one of them, as debtor in possession, or by a trustee for such Ground Lessor, or any one of them, pursuant to Section 365 of the Bankruptcy Code or (B) any attempt by such Ground Lessor, or any one of them, as debtor in possession, or by a trustee for such Ground Lessor, or any one of them, to sell or transfer such Ground Lessor's interest in the Ground Lessor Property or any portion thereof under Section 363 of the Bankruptcy Code;

(c)     <u>Additional Land.</u>  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage  or otherwise, be expressly made subject to the lien of this Security Instrument;

(d)     <u>Improvements.</u>     The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the ***"Improvements");***

(e)     <u>Easements.</u>  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements, including, but not limited to, those arising under and by virtue of the Ground Lease, and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or· proposed; in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements, including; but not limited to, those arising  under  and  by  virtue  of the Ground Lease,  and  every  part  and  parcel  thereof,  with  the appurtenances thereto;

(f)    Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to. all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data- processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions. substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the **"Equipment").**  Notwithstanding the foregoing, Equipment shall not include any property belonging to subtenants under leases except to the extent that Borrower shall have any right or interest therein;

(g)    Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired. by Borrower which is so related to the Land and Improvements fanning part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located. including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, ·apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning. call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and
water, gas, electrical, storm and sanitary sewer 'facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances,
additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the **"Fixtures").**  Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases, except to the extent that Borrower shall have any right or interest therein;

(h)    Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower and used in connection with the Property operation, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the **"Personal Property"),** and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the **"Uniform Commercial Code"),** superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(i)                    Leases and Rents.  All leases (including, without limitation, any ground leases, subground leases, subleases or subsubleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification,

amendment or other agreement relating to such lease, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the **"Leases")**, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 *et seq.,* as the same may be amended from time to time (the **"Bankruptcy Code")** and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the **"Rents")** and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and the performance of the Other Obligations;

      (j)   <u>Condemnation Awards.</u>  All Awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all or any portion of the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change ·of grade, or for any other injury to or decrease in the value of the Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Property or any portion thereof; and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

      (k)   <u>Insurance Proceeds.</u>  All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any Policies, judgments, or settlements made in lieu thereof, in connection with a Casualty to the Property;

      (l)   <u>Tax Certiorari.</u>  All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Property;

      (m)   <u>Conversion.</u>  All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

      (n)   <u>Rights.</u>  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Prope1ty and to commence any action or proceeding to protect the interest of Lender in the Property;

      (o)   <u>Agreements.</u>  All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower

therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(p)    <u>Trademarks</u>.   All trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(q)    <u>Accounts.</u>   All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement, the Clearing Account Agreement or the Cash Management Agreement; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

(r)    <u>Other Rights.</u>   Any and all other rights of Borrower in and to the items set forth in <u>Subsections (a)</u> through (p) above.


AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being-understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the ***"Real Property")*** appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

Exhibit A

PARCEL I

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough and County of Bronx. City and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the Southeasterly side of Westchester Avenue distant 66.37 feet Northeasterly from the comer formed by the Intersection of the Northeasterly side of Longwood Avenue with the Southeasterly side of Westchester Avenue;

RUNNING THENCE Northeasterly along the Southeasterly side of Westchester Avenue a distance of I 08.20 feet to a point;

THENCE Southeasterly on a line forming an interior angle of 68 degrees 48 minutes 02 seconds with the Southeasterly side of Westchester Avenue,   distance of 105.49 feet to a point;

THENCE Southeasterly on a line forming an exterior angle of 141 degrees 04 minutes 28.4 seconds with the preceding course, a distance of l.54 feet (deed 1.35 feet) to a point;

THENCE Southwesterly on a line forming an exterior angle of 105 degrees 49 minutes 49.0 seconds with preceding course, a distance of 9.07 feet to a point;

THENCE Northwesterly on a line forming an interior angle of 88 degrees 24 minutes 31 seconds with the preceding course, a distance of 14.03 feet to a point;

.THENCE Southwesterly on a line forming an exterior angle of 89 degrees 10 minutes 04 seconds with the preceding course, a distance of 24.09 feet to a point;

THENCE Northwesterly on a line forming an interior angle of 88 degrees 05 minutes 43 seconds with the preceding course, a distance of 36.12 feet to a point;

THENCE Southwesterly on a line forming an exterior angle of 88 degrees 57 minutes 41 seconds with the preceding course, a distance of 37.67 feet to a point;

THENCE Northwesterly on a line forming an interior angle of 89 _degrees 51 minutes 58 seconds with the preceding course, a distance of 50.63 feet (deed 50.21 feet) to the Southeasterly side of Westchester Avenue, the point or place of· BEGINNING.

For Information Only

(Block 2689 Lot 1)

PARCEL 2

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough and County of Bronx, City and State of New York, being more particularly bounded and described as follows:

BEGINNING at the comer formed by the intersection of the Southeasterly side of Westchester Avenue with the-Northeasterly side of Longwood Avenue;

RUNNING THENCE Northeasterly along the Southeasterly side of Westchester Avenue a distance of 66.37 feet to a point;

THENCE Southeasterly at right angles to the Southeasterly side of Westchester Avenue, a distance 50.63 feet (deed 50.21 feet) to a point;

THENCE Northeasterly on a line forming an exterior angle of 89 degrees 51 minutes 59 seconds with the preceding course, a distance of 37.67 feet to a point;

THENCE Southeasterly on a line forming an interior angle of 88 degrees 57 minutes 41 seconds with the preceding course, a distance of 36.12 feet to a point;

THENCE Northeasterly on a line forming an exterior angle of 88 degrees 05 minutes 43 seconds with the preceding course, a distance of 24.09 feet;

THENCE Southeasterly on a line forming an interior angle of 89 degrees 10 minutes 04 seconds with the preceding course, a distance of 14.03 feet to a point;

THENCE Northeasterly on a line forming an exterior angle of 88 degrees 24 minutes 31 seconds with the preceding course, a distance of 9.07 feet to a point;

THENCE Northeasterly on a line forming an exterior angle of 141 degrees 4 minutes 28.4 seconds with the preceding course, a distance of 1.54 feet (deed 1.35 feet) to a point;

THENCE Southeasterly on a line forming an interior angle of 105 degrees 49 minutes 49.0 seconds with the preceding course, a distance of 30.71 feet (deed 30.72 feet) to a point;

THENCE Southwesterly at right angles to the preceding·course, a distance of 100.00 feet to the Northeasterly side of Longwood Avenue;

THENCE Northwesterly along the Northeasterly side of Longwood Avenue, a distance of 167.47 feet to the point or place of BEGINNING.

For Information Only

(Block 2689 Lot 48)

PARCEL 3

ALL that certain plot, piece or parcel of land situate, lying and being in the, Borough and County of Bronx, City and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the Northerly line of Longwood Avenue, distant 225 feet (deed 225 feet) Westerly from the corner formed by the intersection of the Northerly side of Longwood Avenue and the Westerly side of Hewitt Place;

RUNNING THENCE Northerly at right angles to Longwood Avenue and part of the way through a party wall, 100 feet;

THENCE Westerly parallel with Longwood Avenue, 100 feet;

THENCE Southerly along a line at right angles to Longwood Avenue, 100 feet to the northerly side of said Longwood Avenue;

THENCE Easterly along said Northerly side of Longwood Avenue, 100 feet to the point or place of BEGINNING.

For Information Only

(Block 2689 Lot 47)

Being also described as follows:

All that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, being more particularly bounded and described as follows:

Beginning at the comer formed by the intersection of the Southeasterly side of Westchester Avenue with the Northeasterly side of Longwood Avenue;

Running thence Northeasterly along the Southeasterly side of Westchester Avenue a distance of 174.57 feet to the point;

Thence Southeasterly on a line forming an interior angle of 68 degrees 48 minutes 02 seconds with the Southeasterly side of Westchester Avenue, a distance of 105.49 feet to a point;

Thence Southeasterly on a line forming an exterior angle of 141 degrees 04 minutes 28.4 seconds with the preceding course, a distance of 132.25 feet to a point;

Thence Southwesterly at right angle to the northeasterly side of Longwood Avenue, a distance of 100.00 feet to a point on the Northeasterly side of Longwood Avenue;

Thence Northwesterly, along the said Northeasterly side of Longwood Avenue, a distance of 267.47 feet to the point or place of beginning

<u>Exhibit B</u>

1.  Lease dated 2/20/2004 made by and between Hyun Corp. and Pillar Enterprise, Inc., as Lessor, and Slane Properties, LLC. as Lessee, as evidenced by Memorandum of Lease dated 4/3/2006 recorded 7/18/2006 in CRFN 2006000407884, as modified by Modification of Lease made by and between Hyun Corp. and Pillar Enterprise, Inc., as Lessor, and .Slane Properties, LLC, as Lessee, dated January 12, 2005, as assigned and.amended by Lease Assignment and Amendment made by and between Hyun Corp. and Pillar Enterprise, Inc., as Lessor, Slane Properties, LLC, as Assignor, and 840 Westchester Ave. LLC as Assignee, dated 12/17/2013, a memorandum thereof to be recorded in the Office of the City Register of the City of New York, Bronx County, which leases, subject to its terms, covenants and conditions, are valid and subsisting leases for its unexpired term.

With regard thereto

    Non-Subordination, Non-Disturbance and Attornment Agreement made by and between Hyun Corp., Pillar Enterprise, Inc., Shinhan Bank America and Slane Properties, LLC dated 12/12/2007 recorded 1/15/2008 in CRFN 2008000018038.

    Estoppel Certificate and Agreement made by and between Hyun Corp., Pillar Enterprise, Inc. an Shinhan .Bank America in favor of Cantor Commercial Real Estate Lending, L.P. dated 12/17/2013, to be recorded in the Office of the City Register of the City of New York, Bronx County.

(Affects Parcels 1 and 2)

2.  Lease dated 1/12/2005 made by and between 867 Longwood Corp., as Lessor, and Slane Properties, LLC. as Lessee, as evidenced by Memorandum of Lease dated 4/3/2006 recorded 7/18/2006 in CRFN 2006000407885, as modified by Modification of Lease made by and between 867 Longwood Corp., as Lessor, and Slane Properties, LLC, as Lessee, dated January 12, 2005, as assigned and amended by Lease Assignment and Amendment made by and between 867 Longwood Corp., as Lessor, Slane Properties, LLC, as Assignor, and '840 Westchester Ave. LLC as Assignee, dated 12/17/2013, ·a memorandum thereof to be recorded in the Office of the City Register of the City of New York, Bronx County, which leases, subject to its terms, covenants and conditions, are valid and subsisting leases for its unexpired term.

With regard thereto

(a) Non-Subordination, Non-Disturbance and Attornment Agreement made by and between 867 Longwood Corp., Shinhan Bank America and Slane Properties, LLC dated 12/12/2007 recorded 1/15/2008 in CRFN 2008000018391.

(b) Estoppel Certificate and Agreement made by and between 867 Longwood Corp. and Shinhan Bank America in favor of Cantor Commercial Real Estate Lending, L.P. dated 12/17/2013, to be recorded in the Office of the City Register of the City of New York, Bronx County.

(Affects Parcel 3)

3